IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LARYIE EARL JONES,                :
AIS# 156610,                      :
        Plaintiff,                :
                                  :
vs.                               :        CIVIL ACTION 13-189-KD-M
                                  :
SYLVESTER FOLKS, *et al.*,        :
        Defendants.               :
                                  :


                    REPORT AND RECOMMENDATION

        This § 1983 action, filed by Laryie Earl Jones, an

Alabama prison inmate, proceeding *pro se,* was referred to

the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and

Local Rule 72.2(c)(4), and is now before the Court on

Plaintiff's Complaint (Doc. 1), Defendants Sylvester Folks,

Barry Dunning, and Albert Miller's Answer and Special

Report (Docs. 20, 21), which the Court has converted into a

Motion for Summary Judgment (Doc. 22), and Plaintiff's

response thereto filed on January 2, 2014.  (Doc. 23).

After consideration of these pleadings, and for the reasons

set out below, it is recommended that Defendants' Motion

for Summary Judgment be granted and that Plaintiff's action

be dismissed with prejudice.

                    I.   Facts and Proceedings

Based on the record before it, the Court summarizes the parties' allegations as follows.  Plaintiff Laryie Earl Jones is serving "3 Lifes" for "three counts of drug paraphernalias [sic]" in the Alabama Department of Corrections (hereinafter "ADOC").  (Doc. 1 at 6).  On April 12, 2013, Plaintiff filed this § 1983 action naming as Defendants, Warden Sylvester Folks (hereinafter Defendant Folks), Lieutenant Barry Dunning (hereinafter Defendant Dunning), and Correctional Officer Albert Miller (hereinafter Defendant Miller).  (*Id.* at 5).

According to Plaintiff's Complaint, on March 26, 2012, Plaintiff was moved to the Mobile Work Release Center where he started working on a paying job.  (*Id.* at 4).  Once he became eligible, Plaintiff requested a pass to visit his family and ultimately to move them to Mobile.  (*Id.*).  Plaintiff applied for a pass on July 1, 2012, and as of the date he filed the present action, he was still waiting for it to be approved.  (*Id.*).  He contends that the delay in and/or lack of approval is discrimination under the Equal Protection Clause of the Fourteenth Amendment, as well as conspiracy between Defendant Folks and his subordinates. (*Id.*).  In addition to his discrimination and conspiracy claims, Plaintiff contends Defendant Miller retaliated against him for exercising his passes by lying on a

disciplinary charge against Plaintiff.  (Doc. 1 at 6).  To support this claim, Plaintiff states that the only evidence against him in the disciplinary was "conclusory statements of a report.  The accusations were without sufficient evidence, but Miller said to the Plaintiff [']This will kill your passes.[']"

Defendants filed their Answer alleging the defenses of, *inter alia,* immunity, contributory negligence, assumption of the risk, estoppel, duress and fraud.  (Doc. 20 at 1-2).  According to Defendants' Special Report, the ADOC established Administrative Regulation ("AR") 405, which allows inmates to participate in the Inmate Emergency, Pass and Leave Program.  (Doc. 21-4). Administrative Regulation 405 allows certain inmates who meet specific guidelines in the regulation to earn the privilege of restricted visits outside the facility. (*Id.*).  On July 24, 2012, Plaintiff submitted his pass request to see his common law spouse, Annie Kate Head. (Doc. 21-6 at 1).  Defendants Folks and Dunning attest that, pursuant to AR 405'd requirements, Plaintiff's July 24, 2012 request was denied due to his failure to provide adequate verification that Annie Kate Head was his common law spouse.  (Docs. 21-2, 21-4, 21-6 at 1-2, 1-2, 1).

In September of 2012, Plaintiff submitted a second pass request to see his daughter, Ms. Cade. (Doc. 21-7). The request was placed on hold pending verification that Ms. Cade was in fact Plaintiff's daughter. (Doc. 21-2 at 2). Proof that Ms. Cade was Plaintiff's daughter arrived on October 26, 2012. (Doc. 21-9 at 1). Before Plaintiff's request could be processed and granted, he received a disciplinary for, and was found guilty of possession of a cellular telephone and denied his pass/leave privileges for 180 days on November 11, 2013. (Docs. 21-2, 21-3 at 2, 1-11). Plaintiff contends that Defendant Miller charged him with this disciplinary out of retaliation for utilizing his pass privileges (doc. 1 at 6); however, Defendant Miller attests that, while roving Housing Unit A, that he witnessed Plaintiff place something under his leg, and, when asked what it was, Plaintiff held up a black touch screen cell phone, which Defendant Miller confiscated. (Doc. 21-3 at 1).

Since filing this action, Plaintiff has been granted pass/leave requests, and has checked out of the facility on an eight (8) hour pass and three four (4) hour passes. (Doc. 21-1 at 2). Defendants deny violating, conspiring to violate Plaintiff's rights, or retaliating against

Plaintiff regarding his pass/leave privileges. (Docs. 21-1, 21-2, 21-3 at 2, 2, 1).

Plaintiff filed his "Motion to Inform The Court," which the Court treats as his unsworn Response to Defendants' Motion for Summary Judgment, on January 2, 2014. (Doc. 23). Plaintiff does not deny that he has since received pass/leave privileges, but alleges that "all Defendants['] affidavits was [sic] made in bad faith . . . . [and] request[s] a polygraph for all parties." (Doc. 23 at 1).

For relief, Plaintiff requests that "Warden Folks be forbidden from retaliating against Plaintiff for making this Complaint against him, and warned of the criminal and civil consequences if he does[.] Order the Defendant's [sic] to approve a leave to move my family to Mobile for my home plan or order judgment against all Defendant [sic] $5,000 each for their unlawfully [sic] conduct. Plaintiff [sic] family has suffer [sic] a lots [sic]."

## II. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment.

Fed.R.Civ.P. 56(a).  Summary judgment is proper "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material
fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
(1986).  The Court must view the evidence produced by "the
nonmoving party, and all factual inferences arising from
it, in the light most favorable to" that party.  *Barfield
v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  However,
Rule 56(e) states that:

> If a party fails to properly support an
> assertion of fact or fails to properly
> address another party's assertion of fact as
> required by Rule 56(c), the court may:
> (1) give an opportunity to properly support
> or address the fact;
> (2) consider the fact undisputed for
> purposes of the motion;
> (3) grant summary judgment if the motion and
> supporting materials—including the facts
> considered undisputed—show that the movant
> is entitled to it; or
> (4) issue any other appropriate order.

Fed.R.Civ.P. 56(e).  "[T]here is no issue for trial unless
there is sufficient evidence favoring the nonmoving party
for a jury to return a verdict for that party. . . . If the
evidence is merely colorable, . . . or is not significantly
probative, . . . summary judgment may be granted."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50
(1986) (internal citations omitted).  "Summary judgment is

mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

### III. Discussion

#### a. 42 U.S.C. § 1983

As stated above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for the alleged injuries he received as a result of his pass requests being denied by Defendants. (Doc. 1). Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1994).

#### b. Fourteenth Amendment: Equal Protection

Plaintiff alleges that Defendants are denying him equal protection of the law by refusing his pass/leave requests. He contends that he "have [sic] a right to be treated the same as other similarly situated prisoners in

the same prison, 'if not' [sic] it [sic] discrimination."
(Doc. 1 at 5).

The Equal Protection Clause of the Fourteenth
Amendment provides that no state shall "deny to any person
within its jurisdiction the equal protection of the laws."
U.S. Const. Amend. XIV.  "The equal protection clause does
not require that all persons be treated identically."
*Hendking v. Smith,* 781 F.2d 850, 851 (11th Cir. 1986).
Rather, if distinctions between similarly situated
individuals are "reasonable, not arbitrary," and "rest on
grounds having a fair and substantial relation to the
object of the legislation," they will withstand an equal
protection analysis.  *Id.*

To establish a claim cognizable under the Equal
Protection Clause of the Fourteenth Amendment, Plaintiff
must first establish that he is similarly situated with
other prisoners who received disciplinary reports but were
nonetheless allowed to use their pass/leave privileges.
*Damiano v. Fla. Parole and Prob. Comm'n,* 785 F.2d 929, 932
(11th Cir. 1986); *Jones v. Ray,* 279 F.3d 944, 947 (11th
Cir. 2001).

Second, he must establish that Defendants engaged in
invidious discrimination against him based on race,
religion, national origin, poverty or some other

constitutionally protected interest. *Damiano* at 932-33.
"Official action will not be held unconstitutional solely
because it results in a disproportionate impact. . . .
Proof of . . . discriminatory intent or purpose is required
to show a violation of the Equal Protection Clause. . . .
Discriminatory purpose implies that the decision maker []
selected [] a particular course of action at least in part
'because of,' not merely 'in spite of,' its adverse effects
upon an identifiable group." *Benson v. Daniels,* 2013 WL
5818296, *2 (N.D.Ala. Oct. 29, 2013)(*citing Pers. Adm'r of
Mass. v. Feeney,* 442 U.S. 256, 279 (1979). Evidence
indicating a disparity of treatment or even arbitrary
administration of state powers, rather than instances of
purposeful or invidious discrimination, is insufficient to
show discriminatory intent. *Benson* at *2 (*citing McCleskey
v. Kemp,* 481 U.S. 279, 292 (1987).

Applying the law to Plaintiff's allegations, the Court
finds that Plaintiff's claim fails as a matter law because
he has not presented evidence sufficient to establish
essential elements of his equal protection claim on which
he bears the burden of proof at trial. *Midway Servs.,* 508
F.3d at 647. First, Plaintiff alleges that he is being
treated differently than other similarly situated inmates
who received more favorable treatment than he; however, he

fails to provide any support that other inmates similarly situated were receiving passes while he was not. In fact, he does not name any such inmate at all. The Court reviewed the record in a light most favorable to Plaintiff and could find no evidence on which a jury could hang their hat in favor of Plaintiff. Without any evidentiary support, the Court finds that Plaintiff has failed to meet his burden on the first element of equal protection.

Second, Plaintiff fails to establish that he was treated differently on account of some form of invidious discrimination tied to a constitutionally protected interest. Plaintiff has failed to state on what constitutionally protected grounds, i.e., race, religion, national origin, poverty, etc., he was allegedly discriminated against. *See Benson,* at *2; *Snowden v. Hughes,* 321 U.S. 1, 8 (1944)("[t]he unlawful administration [] of a statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991)("there must be an allegation of invidious or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that Fourteenth

Amendment guarantees equal laws, not equal results); *Cruz v. Skelton,* 543 F.2d 86, 92-93 (5th Cir. 1976)(affirming dismissal of prisoner's equal protection claim because there was no allegation of invidious discrimination based on such considerations as race, religion, national origin or poverty).  Viewing the evidence in Plaintiff's favor, the Court finds that Plaintiff has failed to establish essential elements to his equal protection claim on which he carries the burden.

On the contrary, Defendants have sufficiently proven that all inmates incarcerated at the Mobile Work Release Center must comply with the requirements of AR 405 to receive a pass to leave the facility.  Additionally, Defendants provide two non-discriminatory reasons for the denial of Plaintiff's pass requests.

First, Plaintiff's request to visit his common law wife was denied because Plaintiff failed to authenticate the identity of his sponsor.  (Doc. 21-2 at 1-2). Administrative Regulation 405 requires some proof to establish a common law marriage.  (Doc. 21-4 at 3).  For instance, "present agreement of consent to be husband and wife," "public recognition of the existence of the marriage," "cohabitation or mutual assumption openly of marital duties," "tax returns filed as married," "use [of]

the same name, [] wedding rings, [] joint accounts and refer to each other as husband and wife." (*Id.* at 1-2). In making his request, Plaintiff provided none of the aforementioned proof, and thus, was denied for that non-discriminatory reason. (Docs. 21-5, 21-6).

Second, Plaintiff's request to visit his daughter, Ms. Cade, was denied because he violated ADOC policy by possessing a black touch screen cell phone confiscated by Defendant Miller. Administrative Regulation 405 plainly states that passes are privileges, not rights, and must be earned by inmates according to the guidelines established in AR 405. (Doc. 21-4 at 1). To be eligible for a pass to see an immediate family member, like Plaintiff requested here, proof of the relationship must be verified and deemed acceptable by the Warden (*Id.* at 3), the inmate must exhibit exceptional behavior, work characteristics, attitude and be classified as minimum-community custody only, and "must not have any major disciplinary action in the preceding six (6) months." (*Id.* at 9). "Any inmate receiving disciplinary action will be required to start the process over . . . ." (*Id.* at 10).

When Plaintiff submitted his request to see his daughter, it was put on hold until proof of the relationship was provided. Proof of the relationship

arrived at the facility on October 26, 2012. (Doc. 21-9).
On October 28, 2012, before Plaintiff's request had been
processed, he received a disciplinary for the "unauthorized
possession of a phones(s)/accessory(s)." (Docs. 21-2, 21-3
at 2, 1-11). There is no dispute that a disciplinary
hearing was held wherein Plaintiff was found guilty of the
violation and his pass privileges were revoked for non-
discriminatory determination. (Doc. 21-7). Moreover, in
his response, Plaintiff does not deny Defendants'
explanations behind charging him with the disciplinary. He
merely states that Defendants' affidavits were made in bad
faith and requests a polygraph, which is insufficient to
counter Defendants' submissions.

Furthermore, the record reflects that, since filing
the present action, Plaintiff has regained his eligibility
to apply for a pass and has been granted the privilege to
take an eight hour pass and three four hour passes.

For these reasons, it is clear that Plaintiff has
failed to establish essential elements to his equal
protection claim on which he carries the burden. *See*
*Midway Servs.,* 508 F.3d 641, 647. Therefore, Plaintiff's
equal protection claim, as it pertains to all named
Defendants, is due to be dismissed with prejudice.

c. Retaliation and Conspiracy

Plaintiff contends that Defendant Miller "lie[d] on the disciplinary charge against [him] in retaliation for the exercise of his passes. The only evidence at the hearing were [sic] the conclusory statements of a report. The accusations were without sufficient evidence, but Miller said to [] Plaintiff[, ']This will kill your passes.[']" (Doc. 1 at 6). In addition to retaliation against Defendant Miller, Plaintiff appears to allege that that Defendants Folks and Miller conspired to retaliate against him for utilizing his pass privileges. Though Plaintiff does not specifically state that Defendant Miller was in conspiracy with Defendant Folks, the Court presumes this conspiratorial relationship in the allegations that Defendant Folks is "responsible for the misdeeds of his employees, he's personally aware of the unlawful conduct of his subordinate and failed to correct that unlawful conduct.[1] It [sic] conspiracy." (*Id.* at 5).

---

[1] It is well established in this Circuit that supervisory officials are not liable [] for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir. 2003)(citations omitted). "The standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* To establish supervisory liability in this Circuit, a plaintiff must show that either the supervisor personally participated in the alleged unconstitutional conduct or that there is a "causal connection between the actions of a supervising

"The First Amendment forbids prison officials from
retaliating against prisoners for exercising the right of
free speech." *Farrow v. West,* 320 F.3d 1235, 1248 (11th

---

official and the alleged constitutional deprivation."
*Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003).  To
establish a causal connection, a plaintiff must plead facts
that plausibly show a causal relationship in one of three
ways: (1) the supervisor had notice of a wide spread
history of abuse which he neglected to correct, (2) the
supervisor implemented a custom or policy that resulted in
deliberate indifference to constitutional rights, or (3)
the facts support the inference that the supervisor
directed subordinates to act unlawfully or knew that the
subordinates would act unlawfully and failed to stop them
from doing so.  *Gonzalez* 325 F.3d at 1234-35 (citations
    omitted).
    Plaintiff alleges that Defendant Folks, as Warden, is
"responsible for the misdeeds of his employees [because he
was] personally aware of the unlawful conduct of his
subordinate[s] and failed to correct that unlawful
 conduct."  (Doc. 1 at 5).  Plaintiff provides no factual
support sufficient to bolster his claim that Defendant
Folks had personal knowledge of any alleged constitutional
deprivation under *Cottone* and *Gonzalez*; thus, his
statements are deemed conclusory and should be dismissed as
such.  *See Ashcroft,* 556 U.S. at 678; T*wombly,* 550 U.S. at
555; *see also, Fullman,* 739 F.2d at 556-57 (a complaint
will be dismissed as insufficient where the allegations are
vague and conclusory).
    The record indicates that other than reviewing
Plaintiff's disciplinary proceeding records to ensure
compliance with ADOC Administrative Regulations, Defendant
Folks had no personal participation in any of the
constitutional deprivations for which Plaintiff complains.
Likewise, Plaintiff fails to provide any facts sufficient
to indicate that Defendant Folks had notice of a widespread
history of abuse, implemented a policy resulting in
deliberate indifference to Plaintiff's constitutional
rights, or directed his subordinates to act unlawfully, or
knew that they would act unlawfully and failed to stop
them.  *Gonzalez,* 325 F.3d at 1234-35.  Accordingly,
Plaintiff's claim for supervisory liability against
Defendant Folks fails as a matter of law.

Cir. 2003).  It is well established that an inmate exercises his First Amendment free speech rights when he complains about the conditions of his confinement. *O'Bryant v. Finch,* 637 F.3d 1207, (11th Cir. 2011)(*citing Smith v. Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008)). "However, it has been recognized that claims of retaliation are subject to abuse by prisoners."  *Id.* (citation omitted).  Thus, claims of retaliation by prisoners should be reviewed with "skepticism and particular care."  *Parker* 2013 WL 1180310 at *4 n.3 (N.D.Ala. Feb. 6, 2013) (*citing Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995)).

To state a First Amendment claim for retaliation, the inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action. . . and the protected speech. . . ."  *Smith v. Mosley,* 532 F.3d at 1276.  "To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." *Moton v. Cowart,* 631 F.3d 1337, 1341 (11th Cir. 2011)(*citing Mosley* at 1278).

First, there is no dispute that Plaintiff's lamentations about the alleged discriminatory denial of his pass privileges is protected speech, as is filing the present Complaint. Second, without making such a determination, the Court assumes that the disciplinary hearing and resulting finding of guilt and sanctions would likely deter a person of ordinary firmness from engaging in such speech. Thus, for purposes of this analysis, the first two elements of Plaintiff's retaliation claim are deemed satisfied.

However, Plaintiff's retaliation claim fails on the third element of causation. Regarding Defendant Miller, the only fact Plaintiff offers to support his claim is that Defendant Miller told him that the disciplinary charge would kill his passes. (Doc. 1 at 6). This statement by Defendant Miller was an accurate reflection of the consequences of picking up a disciplinary charge based on AR 405. Plaintiff has presented no evidence which would reasonably support the inference that Defendant Miller was subjectively motivated by Plaintiff's request for passes to charge him with a disciplinary. Plaintiff's allegation does not raise a right to relief against Defendant Miller above the speculative level, and thus he fails to meet the third and essential element to his retaliation claim. *See*

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, (2007); *see also e.g., Smith v. Fla. Dep't of Corr.,* 375 F. App'x 905, (11th Cir. 2010) (holding that state prisoner's conclusory and speculative allegations of a retaliatory motive in preparing disciplinary report based on his refusal to comply with an order to leave infirmary following a broken pelvis were insufficient to state a § 1983 claim for First Amendment retaliation); *Williams v. Brown,* 347 F. App'x 429 (11th Cir. 2009) (dismissing prisoner's retaliation claims against two correctional officers as conclusory, where prisoner merely alleged that the two officers transferred him after prisoner filed grievances against a third officer, but failed to allege facts associating the two officers with a retaliatory motive arising from the grievances).[2] Plaintiff's retaliation claim as it relates to Defendant Miller is due to be dismissed.

Plaintiff's retaliation claim as it applies to Defendant Folks also fails for the following reasons. In his prayer for relief, Plaintiff requests that Warden Folks be forbidden from retaliating against Plaintiff for filing the present Complaint and requests that Defendant Folks be warned of the criminal civil consequences if he does.

---

[2] The undersigned cites unpublished opinions only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

(Doc. 1 at 7).  The Court notes that Plaintiff does not allege any specific conduct on the part of Defendant Folks indicating that he has committed any act of retaliation against Plaintiff.

First, the concept of retaliation rests upon conduct that has already occurred against the plaintiff by the official for speech that is constitutionally protected or that an objectively reasonable fear of retaliation exists if the inmate files a grievance regarding the official's behavior.  *See Cox v. Grayer,* 2010 WL 1286837, at *9 (N.D.Ga. Mar. 29, 2010).  Any attempt to raise a claim for retaliation based on conduct that is yet to occur, without alleging an objectively reasonable fear of retaliation, is purely speculative and fails to establish any element of retaliation under the First Amendment.[3]

---

[3] Plaintiff's request to forbid retaliation could be interpreted as a request for preliminary injunction. However, a request for preliminary injunction likewise fails.  To warrant the issuance of a preliminary injunction, a Plaintiff must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury without the injunction; (3) that the harm to the plaintiff outweighs the harm to the non-moving parties; and (4) that an injunction would be in the interest of the public.  Calloway v. Mason, 2013 WL 5441974, at *4-*5 (M.D.Ala.,2013).  "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion" as to each of the four prerequisites.  *Id.* (citations omitted).

Regarding Plaintiff's injunctive request seeking to

Assuming Defendant Folks did engage in conduct which may be construed as retaliatory against Plaintiff, the Court finds that Plaintiff fails to carry his burden on establishing causation. Plaintiff's allegation does not offer any evidence which causally connects Defendant Folks' actions as being subjectively motivated by Plaintiff's complaints in denying his pass requests or approving the findings and proceedings of the disciplinary.

Furthermore, it is well established that if a prisoner is found guilty of an actual disciplinary infraction after being afforded due process *and* there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. *O'Bryant* 637 F.3d at 1215 (emphasis in original). Because disciplinary proceedings can take place in a highly

_____

forbid Defendant Folks from retaliating against him in the future, the Court finds that if Plaintiff's request were to be granted, the resulting injunction would amount to a broad instruction to Defendant Folks to obey the law. *Id.* "Rule 65(d) of the Federal Rules of Civil Procedure requires injunctions to be specific; an injunction which merely orders the defendants to obey the law is too broad and too vague to be enforceable. *Id.* (*citing Burton v. City of Belle Glade,* 178 F.3d 1175, 1201 (11th Cir.1999). Because this presumed request for injunctive relief does not conform to the specificity requirement of Rule 65(d) of the Federal Rules of Civil Procedure, it is unenforceable and is due to be denied. *Id.*

charged atmosphere where evidence that might be insufficient in less exigent circumstances, the Supreme Court instructed that courts are not to set aside decisions of prison administrators that have some basis in fact since disciplinary proceedings, under the Due Process Clause, do not require the full panoply of rights due a defendant in a criminal proceeding. *Id.* at 1214 (*citing Wolff v. McDonnell,* 418 U.S. 539 (1974). Thus, applying *Wolff,* the Supreme Court stated that "courts are not to conduct exhaustive reviews of the findings of prison disciplinary panels," because to do so would interfere with the legitimate penological objectives of the corrections system. *Young v. Jones,* 37 F.3d 1457, 1460 (11th Cir. 1994)(*citing Superintendent v. Hill,* 472 U.S. 445 (1985)). With this instruction, it becomes clear that a finding of guilt by the hearing officer "essentially checkmates [the plaintiff's] retaliation claim." *Parker,* 2013 WL 1180310, at *5 (*citing Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 2008).

Therefore, a prisoner may not maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report when there is some evidence to sustain the conviction. *O'Bryant* at 1215; *see also Henderson,*

*supra,* at 469; *Crittendon v. Campbell,* 2007 WL 2853398, at
*7 (M.D. Ala. Sept. 27, 2007).

Defendant Miller attests that, while roving Housing
Unit A, he witnessed Plaintiff place something under his
leg, and, when asked what he had, Plaintiff held up a black
touch screen cell phone, which was confiscated by Defendant
Miller.  Disciplinary proceedings were held wherein, based
on Defendant Miller's sworn testimony, and "the fact that
Plaintiff could not show any proof or shadow of a doubt
that the cell phone was not his, Plaintiff was found guilty
of the charge."  (Doc. 21-3 at 4).  Therefore, because
Plaintiff was convicted of the charge, and there was some
evidence on which the conviction was based, Plaintiff may
not maintain a claim for retaliation against Defendants
Folks or Miller.

### d. Conspiracy

In addition to retaliation against Defendant Miller,
Plaintiff appears to allege that that Defendants Folks and
Miller conspired to retaliate against him for utilizing his
pass privileges.  Though Plaintiff does not specifically
state that Defendant Miller was in conspiracy with
Defendant Folks, the Court presumes this conspiratorial
relationship in the allegations that Defendant Folks is
"responsible for the misdeeds of his employees, he's

personally aware of the unlawful conduct of his subordinate and failed to correct that unlawful conduct.[4]  It [sic] conspiracy."  (Doc. 1 at 5).

---

[4] It is well established in this Circuit that supervisory officials are not liable [] for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir. 2003)(citations omitted).  "The standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous."  *Id.*  To establish supervisory liability in this Circuit, a plaintiff must show that either the supervisor personally participated in the alleged unconstitutional conduct or that there is a "causal connection between the actions of a supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003).  To establish a causal connection, a plaintiff must plead facts that plausibly show a causal relationship in one of three ways: (1) the supervisor had notice of a wide spread history of abuse which he neglected to correct, (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, or (3) the facts support the inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.  *Gonzalez* 325 F.3d at 1234-35 (citations omitted).

Plaintiff alleges that Defendant Folks, as Warden, is "responsible for the misdeeds of his employees [because he was] personally aware of the unlawful conduct of his subordinate[s] and failed to correct that unlawful conduct."  (Doc. 1 at 5).  Plaintiff provides no factual support sufficient to bolster his claim that Defendant Folks had personal knowledge of any alleged constitutional deprivation under *Cottone* and *Gonzalez*; thus, his statements are deemed conclusory and should be dismissed as such.  *See Ashcroft,* 556 U.S. at 678; T*wombly,* 550 U.S. at 555; *see also, Fullman*, 739 F.2d at 556-57 (a complaint will be dismissed as insufficient where the allegations are vague and conclusory).

The record indicates that other than reviewing Plaintiff's disciplinary proceeding records to ensure

It is well settled under "Federal Rule of Civil
Procedure 8(a)(2), a pleading must contain a 'short and
plain statement of the claim showing that the pleader is
entitled to relief.'" *Ashcroft v. Iqbal*, 566 U.S. 662,
677-78 (2009). A pleading that "offers 'labels and
conclusions' or 'a formulaic recitation of the elements of
a cause of action will not do.'" *Twombly,* 550 U.S. at 555
(citation omitted). Nor does a complaint suffice if it
tenders "naked assertions" devoid of "further factual
enhancement." *Id.* Applying these concepts to Plaintiff's
claim of conspiracy, which is merely a conclusory, naked
assertion devoid of factual enhancement, this Court finds
that Plaintiff has failed to allege factual support for a
proper conspiracy claim; however, out of an abundance of
caution, we will address Plaintiff's allegations.

Plaintiff alleges a conspiracy existed between
Defendant Folks and Defendant Miller by simply writing the

---

compliance with ADOC Administrative Regulations, Defendant
Folks had no personal participation in any of the
constitutional deprivations for which Plaintiff complains.
Likewise, Plaintiff fails to provide any facts sufficient
to indicate that Defendant Folks had notice of a widespread
history of abuse, implemented a policy resulting in
deliberate indifference to Plaintiff's constitutional
rights, or directed his subordinates to act unlawfully, or
knew that they would act unlawfully and failed to stop
them. *Gonzalez,* 325 F.3d at 1234-35. Accordingly,
Plaintiff's claim for supervisory liability against
Defendant Folks fails as a matter of law.

word, "conspiracy," in his Complaint.  (Doc. 1 at 5-6). "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed."  *Fullman,* 739 F.2d at 557 (citations omitted). "Similarly, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment . . . but [the respondent], by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment . . . shall be entered against him."  *Id.* (citing Fed.R.Civ.P. 56(e)).

     "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show that the parties 'reached an understanding' to deny the plaintiff his . . . rights [and] prove an actionable wrong to support the conspiracy."  *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990).  For a conspiracy claim to survive a motion for summary judgment "[a] mere 'scintilla' of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  The Court finds that Plaintiff's claim for conspiracy fails as a matter of law, as there is not even a scintilla of evidence upon which

Plaintiff may rest his claim.  He has provided the Court with no factual support sufficient to infer that a jury could return a verdict in his favor on this claim. Plaintiff's claim is merely conclusory and due to be dismissed with prejudice.

## IV.  Conclusion

Based on the foregoing reasons, this Court concludes that Defendants Sylvester Folks, Barry Dunning and Albert Miller are entitled to Summary Judgment in their favor on all claims asserted against them by Plaintiff Laryie Earl Jones.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action against these Defendants be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4.  In order to be

specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 5th day of February, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE